**FREY v. GREAT SOUTHERN LIFE INS. CO.***

No. 5242.

Court of Appeal of Louisiana. Second Circuit.

April 30, 1936.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Goff & Goff, of Arcadia, for appellee.

HAMITER, Judge.

Lloyd M. Frey, plaintiff herein, is the insured under two life insurance policies issued by the Louisiana State Life Insurance Company on October 29, 1923. The premiums thereon are payable on October 7th of each year. Subsequent to the issuance of the policies, the assets and liabilities of that company were transferred to and assumed and accepted by the Great Southern Life Insurance Company.

Each policy contains the following provisions which are relevant to a decision of this case, viz:

"Louisiana State Life Insurance Company * * * promises to pay for the Insured the premiums required hereon, and to the Insured, beginning one year after the anniversary of the date of this policy after due proof of total disability has been received by the Company, an annuity of ten dollars per month, as long as he shall live, and in addition thereto, promises to pay one thousand dollars which is the face amount of this policy immediately upon receipt of due proof of the interest of the Claimant and the death of the Insured to the Beneficiary named above. The above benefit shall accrue to the Insured upon written request of the Insured with a legal waiver of all other benefits hereunder and due proof of injuries or disability as set forth on page three occurring before the Insured reaches the age of sixty years and subject to all the conditions set forth in the paragraph headed total and permanent disability on the third page hereof. * * *

"If the total and permanent disability referred to is from causes other than the entire and irrevocable loss of both eyes, both hands, or both feet, such disability must be such that there is neither then nor at any time thereafter any work, occupation or profession that the Insured can sufficiently do or follow to earn any wages, compensation or profit and the Insured must furnish from time to time evidence satisfactory to the Company of continued total disability; and if the Insured shall recover from such total disability sufficiently to enable him to engage in any gainful occupation he shall thereupon resume the payment of full premiums on the next succeeding due date of premium. Premiums paid by the Company for the Insured and any annuity payments hereunder shall not be a lien

on this policy, and the cash loan paid up and extended insurance values in the schedule shown on the second page shall increase in the same manner as if the premiums were paid by the Insured."

In November, 1924, plaintiff was stricken with cerebral hemorrhage, or apoplexy, resulting in the paralyzing of the right side of his body. From that date to and including September, 1928, he was paid disability benefits at the rate of $20 per month, under the provisions of the policies, by the defendant or its transferor, and the premiums were likewise paid by the insurer as they came due. While these benefits were being paid, plaintiff obtained a loan of $62 on each policy. After September, 1928, no further disability payments were made to plaintiff, and he in turn paid no premiums on the policies.

This suit was filed on January 11, 1935, for the purpose of recovering disability benefits of $20 per month from October, 1928, to January, 1935, with reservation of rights to sue for additional benefits from February, 1935. Plaintiff alleged that in September of 1928 he was still totally disabled to do or perform any work or to follow any occupation or profession by which he could earn any wages, compensation, or profit, and that he continued in such condition to the date of the filing of this suit.

The defense, as revealed by defendant's answer and its counsel's brief, is that plaintiff failed to pay the premiums on his policies that were due and owing by him on October 7, 1928, the payment of disability benefits having ceased after September, 1928; that at that time there was also due to defendant, under each of said policies, the sum of $62, which amounts represented the unpaid loans made to plaintiff; that the policies terminated and lapsed on November 7, 1928, the expiration of the grace period allowed for the payment of the premiums, without any value or equity whatever therein; that any claim which plaintiff might have had was barred and prescribed under the provisions of Act No. 68 of 1906. It specially pleaded the prescription of two years and also the laches of plaintiff in bar of any recovery in the cause.

The trial court granted judgment in favor of plaintiff as prayed for, and defendant has appealed.

The record contains an admission of counsel that any judgment which might be rendered on the policies would be binding upon the Great Southern Life Insurance Company.

■ The testimony of medical experts and that of the lay witnesses offered by plaintiff conclusively establishes that he was totally disabled continuously, and unable to perform any type of gainful occupation, from the time of his paralytic stroke in November, 1924, to the date of trial of this case in 1935. No testimony was furnished by defendant to show a contrary condition. Defendant contented itself with eliciting testimony from plaintiff's witnesses, under cross-examination, tending to show that the insured attempted to sell radium bars for a period of approximately thirty days during the year 1928, on a house to house canvass basis. This attempt not only was obviously unprofitable to the insured from a financial standpoint, but resulted in his thereafter being confined to bed. It cannot be stated that his efforts in this regard constituted a recovery from his disability. They can only be considered as representing a very commendable, but unsuccessful, endeavor to provide the necessary sustenance of life for his family and himself. Smith v. Mutual Life Ins. Co., 165 So. 498, and Thompson v. New York Life Ins. Co., 166 So. 863, recently decided by this court; Boughton v. Mutual Life Ins. Co., 183 La. 908, 165 So. 140.

■ Counsel for defendant insists that the policies were lapsed and forfeited on November 7, 1928, as contended in the answer, and that, as no suit was instituted within two years from that date, prescription has accrued under the provisions of Act No. 68 of 1906. The prescriptive portion of this act provides as follows:

"No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued."

The act also contains the following language:

"That no life insurance corporation, etc., doing business in this State shall within one year after the default in payment of any premium, installment or interest declare forfeited, or lapsed, any policy hereafter issued or renewed, * * * unless a written or printed

notice stating the amount of such premium, interest, installment, or portion thereof, due on such policy, the place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured, * * * at his or her last known postoffice address in this State, postage paid by the corporation, or by any officer thereof, or person appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable. * * * and no such policy shall in any case be forfeited or declared forfeited, or lapsed, until the expiration of thirty days after the mailing of such notice."

It is conceded that the record contains no evidence of any notice having been given to plaintiff as contemplated by the above-quoted provisions. But counsel argues that if the policies did not become forfeited on November 7, 1928, they did lapse one year later, because the act merely provides, with reference to the notice portion, that if the formalities therein prescribed are not followed, then a year must elapse before the forfeiture of the policy can be declared by the insurer.

It is to be noted that the defense herein, including the plea of prescription, is founded on the assumption that the policies were forfeited because of plaintiff's nonpayment of premiums. From the view that we take of the case, this foundation is false and without merit. If plaintiff was totally disabled from the year 1924 until the trial of this case, as we have found, and particularly on October 7, 1928, then all premiums during that period should have been, and may be considered as having been, paid by the insurer pursuant to its agreement. And with the premiums paid, the policies were not forfeited, were necessarily in full force and effect continuously from the beginning of plaintiff's disability. This suit, therefore, was not brought on forfeited policies, as contemplated by Act No. 68 of 1906, and that act, and particularly the period of prescription therein provided for, is not applicable to this case. In the case of Compton

v. Amicable Life Ins. Co., 182 La. 991, 162 So. 751, 755, involving the statute in question, the Supreme Court held:

"The plea of prescription is not well founded, for the simple reason that the plaintiff is not suing 'to recover under a forfeited policy.' The only instance in which a suit 'to recover under a forfeited policy' may be maintained is when the suit is for something which the plaintiff is entitled to notwithstanding the policy has lapsed or become forfeited; e. g., a suit for the cash surrender value of the policy. * * *

"It is plain, therefore, that this statute of limitations, or prescription, is applicable only to a suit to recover something which the plaintiff might be entitled to notwithstanding the policy of insurance has lapsed or become forfeited."

In view of our holding that the premiums due on October 7, 1928, must be considered as having been paid by the insurer, it follows that the outstanding loans totaling $124 had no effect with reference to avoiding the policies. Under the policy provisions, the maximum rate of interest charged on loans is 6 per cent. per annum, payable in advance, and loans are granted at the beginning instead of at the end of the year, if so desired by the insured, provided the entire premium for the year has been paid. With the premiums paid on October 7, 1928, this being the beginning of the sixth year of the policies, the loan or cash surrender values for that year, according to the table of values, totaled $160. The maximum interest charged on plaintiff's loans would for that year be $7.44, and this added to the principal of the loans would total $131.44, or an amount less than the loan value for that year.

As the policies were operative during plaintiff's continuous disability, defendant's charge that plaintiff has been guilty of laches and that his alleged cause of action represents a stale claim, is also not well founded.

For the reasons herein given, the judgment is affirmed.